The next case on our calendar is Manette DuBesson v. Stonebridge Life Insurance Company. Thank you. Good morning, counsel. You may proceed. Good morning. May it please the Court, my name is Roger Mandell and I represent the plaintiffs' appellants. Today I'd like to use my 10 minutes to address the main merits issue which will drive the ultimate resolution of this case and which improperly provided the primary basis for the district court's Article III dismissal. And that's whether the New York Savings Statute, New York Insurance Law Section 3103A, may be asserted by defendants as a defense to plaintiff's suit for the recovery of premiums they paid for illegal group or blanket insurance policies which were void ab initio. That issue hinges upon whether this Court follows the New York Rule of Statutory Construction that courts must give effect and meaning to the entire statute in every part and word of it, leaving none of it superfluous. Counsel, can I just interrupt and ask if you were to prevail, what damages you're seeking? Is it return of the premiums? Yes, Your Honor. And that's the only damages you're seeking? Well, under the void ab initio theory, it would be return of the entire premiums. We also have some claims under 349 and 350, the general business statutes, for misrepresentations not based upon illegality. And in those cases, they would be benefit of the bargain or out-of-pocket measures of damages. The difference in value between what was the value of the policies represented and what was actually received or the difference in value between the policy, what was paid for the policies, and what they were actually were. Okay. So your 349 claims are premised on an idea that or an assertion that these were these policies were valueless because they would be so rarely invoked that they weren't worth what they were being paid, what people were paying for them? There were two different misrepresentations primarily. One was that they misrepresented and failed to disclose that they had no intent of ever paying these policies unless they were sued first. They weren't just going to pay them if they were covered. And the second was that they represented in general that the second one is that they represented that these policies provided a million or a million and a half dollars for permanent disability insurance. Well, no. All the papers that you got until you actually got your certificate, until you got later on, just said permanent disability, and they didn't mention any restrictions. And then later on, it turns out, well, what they really meant was permanent disability if you lost complete use of one hand and one foot or both eyes. I mean, things that were incredibly improbable. Let me stop you right there. That claim about the definition of disability, does that violate New York law, insurance law? No, we're not claiming that you can't sell a policy with that coverage. We're just claiming that it was represented to be for permanent disability without any limitations, and it turns out that what you got was disability caused by something that was incredibly unlikely to occur. And so there's a difference in value between what was represented and what you got. 3103 is not in play as to that aspect. No, no. 3103 is on the idea that these policies were illegal group and blanket insurance policies, which made them void ab initio. Well, the question is, is, well, the first level argument, and I think there absolutely can be no dispute about this, is the district court erred on the Article 3 analysis because he conflated the merits and Article 3 analysis. In other words, he went and analyzed the state merits statute. He interpreted 3103A and says, because I find that under New York law you're wrong about your legal theory, therefore there was no Article 3 status. Well, that's conflating Article 3 and the merits. That's something Your Honor warned against in the Pequot Indian v. Lindhurst case about tribal sovereignty. Allegations of economic injury without regard to the merits of those arguments are sufficient to give you Article 3 standing. Doesn't Spokio decide this case? Concrete injury. Where is the concrete injury? The concrete injury is that you paid money for it. You paid illegal, you paid premiums for an illegal and void ab initio policy, which has been found to support the money hadn't received cause of action in New York for over 200 years. You're damaged by paying for a void ab initio worthless policy. And that allegation was sufficient to get us to Article 3. But there's no point in just stopping the court's analysis there, because if we do, the district court will just change his, he'll rule the same thing, but this time it will be a 12B6 on the merits of New York law rather than a 12B1, which is why I wanted to go ahead since it's brief to the court and argue the merits of the savings statute argument. The superintendent, it's no longer insurance, the superintendent of financial services, whatever they call him now, he or she has enforcement authority to go after companies that write illegal policies in New York? Yes, there's some various remedies for that, superintendent. The superintendent could have said this was an illegal group? Yeah, which I'm right, he could have. Has any New York court ever said that that's exclusive and that there are no private claims that can arise under, against illegal policies in New York? No court has ever said that, Your Honor. And there's, I looked through the statute, I mean, this is not in your briefs, but I didn't see anything in the statute that would imply that the powers are exclusively vested to the superintendent. No, no, that's absolutely correct, Your Honor. So on the merits of the issue under 3103 is, is what do the words and binding upon the insurer, and binding upon the insurer mean in section 3103A? Well, the statute says shall be valid and binding upon the insurer. So shall be valid is enough to make the policy enforceable by the insured against the insurer. So and binding upon the insured has to have some other meaning independent of shall be valid. And the only possible meaning that it can have is that it is limiting the effect of the statute to insurers. The statute is only valid as to insurers and not to insurers. Did you seek enforcement of these policies, or did you seek their rescission? Our plaintiffs never make claims under them. We're only seeking. So you're not seeking enforcement of the policies, right? Correct. You don't have any claims under the policy. No, we don't have any claims, and therefore we're not seeking enforcement. We're saying that the effect of 3103, if we had had claims, we could have enforced them. But we're saying conversely, it does not apply to make the policies valid against us. In other words, a defendant cannot assert the statute as a defense to a suit for recovery of premiums paid for an illegal policy. It doesn't work the other way, because that's the — Do you have a case that says that? No, no, Your Honor. This is a case to first impression as to what and binding upon the insurer means. And what's interesting is nine other states have savings statutes. And all of them say — just say, shall be valid. And that's enough for an insurer to enforce it against an insurer. So what is the meaning of this unique language in binding upon the insurer that's only in the New York statute? And we would suggest to you that that means — essentially what it means is it's saying this shall be valid as to the insurer. It doesn't make it valid as to the insured. And so they're not entitled to assert it as a defense. Counsel, you've reserved two minutes for rebuttal. But before I let you go, this was dismissed for lack of standing. So that's a dismissal without prejudice. You agree? Yes. I mean, you could bring — you could replead if — should you want to, stress the 349, 350 of the GBL. Well, he did — while it was without prejudice, he didn't grant us leave to — he did not grant us leave to replead. You need it? I don't think you need it. That's my — Decision on the merits. That's what — that's my point. I don't think you need it. Well, if it's treated — if it doesn't relate back, then we're — we've got a limitations problem if we're filing a brand-new suit. And that's why we need this suit to continue. Thank you very much. You're welcome. We'll hear from the insurance companies. Good morning, Your Honor. My name is Chris Voning. May it please the Court, I'm here on behalf of Apelli Federal Insurance Company, and I'm joined by Stephen Clark, who's here on behalf of Stonebridge. I'll be handling the argument for the non-settling defendant insurance company. You knew these were illegal policies when? We don't acknowledge that these are illegal policies. And we've never acknowledged that these — We presume they're illegal, so we have to presume they're illegal, too, don't we? You never argued for their legality below, did you? You never said these policies are fine? We did. Federal, indeed, below, argued several grounds. First of all, this is a permissible group under New York insurance law. That's number one. Permissible group? New York insurance law permits. What about the alleged policy holder? That is also permissible because the group is to a trust. And so we argued below, which was not reached, that it was a permissible group. We won't reach that. Let's presume that they're illegal. Okay. If we presume that they're — If they are illegal. If we presume they're illegal under — If they are illegal, then you'll go back to the district court and win there, but you'll win on the merits because their standing won't be an issue, will it? Correct. Okay. So let me ask you this. If the district court is right, then someone can write an illegal policy and sell it to New Yorkers, notwithstanding the fact that it's prohibited, and they can do that. Is that right? The remedy. Because the minute an insured, under the district court judge's decision, the minute the insured sues the carrier, the carrier says, well, it's illegal, but 3103 says that it's enforceable. And so, therefore, even though I was violating New York law and issuing policies that the New York legislature and the governor decided New Yorkers shouldn't have to be subjected to, are stuck with. Now, doesn't that make the prohibition seem foolish to you? It does not, Your Honor. Why not? That has been the law in New York since 1918 in the Hopkins decision. It has always been — How many cases has an insurer, other than Judge Cardozo's decision with regard to the coverage, with regard to the death case and the question as to whether there was or was not coverage, how many cases in New York have ever said that an illegal policy is enforceable against the insured by the insurer? Well, we cite to a number. We cite to Roland Benefit Trust, which is the Fourth Department decision. How many from the New York court? We cite to Quanta Specialty, which is another decision under New York law, finding that an insurer can rely on the provisions of the New York insurance law. So someone in New York misses a payment on a premium and they're supposed to pay for four years. They've agreed to pay for four years, and this is an illegal policy. You're saying New York law says that even though the policy is illegal, that the insurer could sue them for their premiums? Under New York law, if they've accepted the benefits. Why bother with calling it illegal then? It's a sham. It makes the statute meaningless. We don't interpret statutes to give them meaningless interpretations, do we? We don't, but that's not an interpretation we're advancing here. The statute in full says it is valid. It says it's illegal. You're an illegal group. You can't issue this policy to this group. It's illegal for whatever reason, and your position is that that doesn't matter. Well, as a matter of Article III standing, it doesn't matter because there's no injury under the law here. These are claimants, plaintiffs' appellants, who've never had a claim. Let me ask you this. You buy a car policy, and you find out that the insurer is not, and on day two, you find out that the insurer is not registered to do business in New York because to be registered to do business in New York as a carrier, you have to establish that you're financially responsible to pay for it, and you have to maintain certain reserves, and you say, you know what? I don't want to take this risk. I want my money back. This is an illegal carrier. This carrier has no right to do business in New York, and you sue to rescind on the second day of the policy, and you want your $2,132 back. Your interpretation of the statute says, don't get it. Right? That's not correct. That's not correct. There's a separate line of decisions as to whether a person is entitled to rescind the policy here. The facts here are that. What are those? If you look at Quanta, if you look at Dornberger, there are cases where courts have debated whether there can be a rescissionary remedy, and the determination is always that you have to, as soon as the risk attaches, you have to determine how much of the premium has been accepted for that risk. Breyer. That might be relevant on the merits, but that certainly understands that the person seeking rescission has standing to seek the claim, doesn't it? But there's no claim. Excuse me. Acknowledge is an injury, doesn't it? But there's no claim for rescission here. The policy is here. But wait a second. I specifically asked your opponent whether his need, whether they were in the nature of rescission or enforcement. The policy is here terminated in 2014. Well, they may not be timely. That's true. But timeliness goes to merits. I'm talking about standing here. So are you. Standing goes to whether there's an injury. And here, if they admit that if they had had a claim. I agree with you. But sometimes there's a significant difference between whether the claim is asserted in the complaint for the plaintiff has standing to assert that claim as opposed to whether the claim is ridiculous or frivolous. That's, well, that, I think that's not correct under Spokio, because here they're claiming under State statute. And under a State statute, they need to show an injury. And here, the Savings Clause of 3103 provides that they are entitled, these policies are valid and binding on the insurer. Yep. So if such a claim had been made during the period, you're representing that they would have been paid, even though. They concede they would have been paid. They do not. Or fetched that you would have the precise injury, as counsel argued. That's correct. These are entirely plaintiffs' appellants here, never had a claim, they've never alleged that they brought a claim, they've never alleged that they had an accident that brought them within the disability policies here. So. And the policies are finished. The policies are over. The policies are over. So there's no claim they could have. There's no risk of future injury to them. Do you have a ballpark figure for what the aggregated premiums were paid for these policies while they were in existence? I do not. Our client stopped issuing these policies in 2004. Would your answer be different if they were suing for rescission in the first year of their payment of premiums? That would be rescission, which would be a State court remedy, would be a different cause of action entirely. That's not what they're pursuing here. They're pursuing a claim that these, they're entitled to a full refund after they've enjoyed the benefits of the policies for 14 years. As they were. Such as they were. Wait a second. So your argument is, is that, wait a second, so I understand this. Because, I mean, this is, obviously I'm troubled by some of this. But, so your argument is, is that what they're suing for is an injury, an injury that never arose. Because, A, they never made a claim and there was never an attempt to avoid payment by illegality. Exactly right. They've never presented a claim. They've never even alleged that they had an accident which would have given them a step into the policy. Who would agree with me that if they were attempting to rescind in the second year of a four-year commitment, they would have an injury because the policy was illegal and they were entitled to a declaration that they didn't have to pay anything further? Not under New York law, because under New York law, they don't have standing to pursue a private or private right of action for violation of the New York insurance  These are. Do you need to talk me right out of agreeing with the district court judge? I'm just noting that under New York law, there is no, there's no standing for private right of action under the insurance statutes that they allege have been violated here. Private right of action for rescission? A private right of action to enforce the requirements of the insurance law. In other words, that is why the provision is. Jim Mass Auto vs. Progressive. Give me the citation. 209 Westlaw 910969. 209 Westlaw what? 910969. I think Judge Gardefee held the same below, that there's no private right of action. What court is that? Western District of New York. Oh, it's not a state court. Correct. Judge McCarthy, that's Magistrate McCarthy. Okay. Thank you, Counselor. Thank you. Thank you. Mr. Mandel, do you have a ballpark figure for how many premiums were paid for how many years? In the state of New York, we believe it was in somewhere between 10 and 20 million dollars, but we'd have to get more discovery, which we didn't get to get exactly to the number. I think there was a little confusion in the question and answer we just had about the main cause of action. It's not rescission. It's that these policies were void ab initio, void at we're never valid policies in the first instance because of the illegality. You see, the problem I have with that is that there was a way for you to collect them. Because if you had complained, if you'd sought a claim and you had attempted to collect on it, either the superintendent of insurance or a court would have said to the insurer that's trying not to pay, you must pay because it's an illegal policy. Well, but let's separate two things. For Article III purposes, the allegations we made that these things were void ab initio and that we would have an economic injury in the form of paying premiums for void ab initio policies gives us Article III standing without regard to the merits. Now we go. Okay. So let me ask you this. So then you're acknowledging that you could have significant issues with latches or statutes of limitations or other things? They've certainly argued statute of limitations and on remand that's something that the district court is going to have to decide and we think will decide in our favor for a number of reasons. So then you go to the merits. Article III is a given, okay, because you can't conflate the merits and standing. So then you go to the merits and the question becomes under 3103, giving meaning to and binding upon the insurer, can a defendant in a suit, defending it's a suit to recover premiums paid for an illegal insurance policy? And the answer is because of that language in 3103, it is not applicable. So we have Article III standing based upon the basic allegations and then when you get to the merits, they can't argue it as a defense because of that language in Section 3103. And that's why the Article III has to be overturned and the court should rule in our favor on the merits on 3103. Why wouldn't we just say that if we agreed with you that he confused a merits analysis with a standing analysis and say what we do is we describe ourselves to the complaint as pled and that the complaint alleges an injury, a concrete injury for which it seeks to regress as to whether there's merit to the claim is another matter for a different day. Why would we reach an issue we don't have to, we would only reach the standing issue which is jurisdictional. Once we say we don't have, once we concluded that there was standing, then the merits issue ought to be determined by the district court. And Your Honor, the reason is a simple matter of judicial efficiency because in all likelihood the judge is just going to make the same ruling on 12B6 and the parties have fully briefed this pure question of law for the court. So as a matter of efficiency, we think you ought to not only say, Judge, you were wrong on Article 3, but go ahead and decide the 3103 issue because it's already fully briefed. It's already been argued to this court. Let's not come back up here with the same briefing and the exact same argument again. Maybe we want an answer from our colleagues in Albany who certainly are the final authority on 3103. Counsel, have any of these lawsuits been successful anywhere around the country? None of them have ever on the merits. There were a number of them that were pending and we settled with a number of the other defendants across the country. That's why there was a delay in this case while the settlement was finalized as to all those other defendants. And these are the non-settling defendants that are still here. We were on appeal in a number of different courts. And, for example, our appeal in the Fourth Circuit was never heard because only the settling defendants were in that case. The Eighth Circuit's not your case? The Eighth Circuit is our case. And, interestingly enough — They're not standing there and then lost on the merits. Yeah, but not on their savings statute. They lost on statute. We lost on statute of limitations and on the pleading of the non-illegality things. But the pleadings in this case are different from that case. But in terms of the issues before this Court, we would ask this Court to look at Graham because we think they got it exactly right. Thank you very much. Thank you. Thank you both. Very interesting argument. Thank you. We'll reserve the decision. The last two cases on our calendar are on submission. So I will ask the Clerk to adjourn Court. Thank you. Thank you.